IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **SEAN WESLEY ELLIS** | **PLAINTIFF** |
| v. | CIVIL NO. 3:23-cv-3021-CWR-LGI |
| **FAIL TELECOMMUNICATION CORPORATION;** | **DEFENDANTS** |
| **CHRISTA ALEXANDER; DONNA ALEXANDER;** | |
| **ALI ALEXANDER-PHILLIPS and JANE DOES** | **(JURY TRIAL DEMANDED)** |

## COMPLAINT

Ellis was CEO of the Fail Telecommunication Corporation. In this position he had a written contract. His contract was unlawfully terminated after interference by the owner's family. For these reasons, COMES NOW THE PLAINTIFF and alleges as follows:

## PARTIES

1. Plaintiff Sean Wesley Ellis is an adult resident of Mississippi.

2. Ellis was born in 1962.

3. Defendant Fail Telecommunication Corporation (FTC) is a Mississippi corporation with its headquarters located in Bay Springs, Mississippi.

4. FTC's registered agent for service of process in Mississippi is Donna F. Alexander, 12 Third Street, P.O. Box 922, Bay Springs, Mississippi 39422.

5. FTC is an "employer" as defined by Title VII of the Civil Rights Act of 1964.

6. FTC has more than twenty employees.

7. FTC is an "employer" as defined by the Age Discrimination in Employment Act.

8. Ellis worked for FTC from Rankin County, Mississippi.

9. Ellis was an "employee" of FTC as defined by Title VII and the ADEA.

10. At the time of the events here, FTC was owned by a revocable trust solely controlled by Dot Fail.

11. Defendant Christa Alexander is the granddaughter of the late Dot Fail. At the time of events here, she was 36 years old. She conspired to replace Ellis by lying about him to Mrs. Fail.

12. Defendant Donna Alexander is the daughter of the late Dot Fail and the mother of Christa Alexander. She conspired with Christa to lie about Ellis to Dot Fail.

13. Defendant Ali Alexander-Phillips is the daughter of Donna Alexander and the sister of Christa Alexander. She conspired with Christa to lie about Ellis to Dot Fail.

14. Defendants Jane Does are persons (of any sex) not yet known that participated in the conspiracy to lie about Ellis to Mrs. Fail.

## JURISDICTION, VENUE, EXHAUSTION, AND JURY DEMAND

15. Jurisdiction is proper in this honorable Court under 28 U.S.C. § 1331 because this claim arises under federal law, including Title VII and the ADEA.

16. Venue is proper in this honorable Court under 28 U.S.C. § 1391 because the work at issue was performed primarily in Rankin County, Mississippi.

17. Plaintiff was notified that he was terminated on September 5, 2022.

18. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity. Commission (Charge No. 423-2023-00104) on October 20, 2022. Exhibit 1.

19. Plaintiff filed an amended charge of discrimination with the EEOC on December 20, 2022. Exhibit 2.

20. Both charges were filed within 180 days of the events alleged in that charge.

21. The charge alleged age discrimination and sex discrimination.

22. The investigation conducted by the EEOC exhausted age discrimination and sex discrimination theories of liability under Title VII.

23. On July 21, 2023, the EEOC issued a notice of right to sue to the Plaintiff. Exhibit 3.

24. Plaintiff brings this action within 90 days of his receipt of that right-to-sue notice.

25. Plaintiff has met the timeliness and administrative exhaustion requirements of Title VII and the ADEA to bring this suit.

26. Plaintiff demands a trial by jury on all issues so triable.

## FACTS

27. Ellis has a long-standing relationship with FTC, having been retained or otherwise contracted as an attorney since the year 2000.

28. Initially consulted for tax matters, over time his role within the company expanded to become a general business advisor within the company.

29. Ultimately, Ellis was appointed CEO of FTC.

30. During this time, the company was struggling financially, with some independent analysts predicting its demise.

31. Through Ellis's leadership, the company has recovered and grown.

32. While serving as CEO of Fail Telecommunication, Ellis was still privately practicing law as a partner in Ridgeland, Mississippi.

33. Due to his success within the company, Dorothy Fail, then owner of FTC, persuaded him to devote more and more time to FTC.

34. Ultimately, Ellis left his position as Partner within his firm to work solely for FTC as full-time CEO of the company.

3

35. As of September 2022, Ellis had a written employment contract which was composed of a number of documents, including a term sheet with compensation terms agreed-to by the owner, and the company handbook and policies.

36. For years FTC continued to grow under his leadership, and his performance or trustworthiness were never an issue.

37. However, he was resented by the Alexanders and co-conspirators.

38. Ellis was financially rigorous and ensured the company abided by tax laws.

39. When Donna Alexander attempted to commit criminal violations of these laws by charging $2,800 in her personal spa charges to the company as a business expense, Ellis did not allow it. Ellis refused other attempts by the Alexanders to commit criminal violations.

40. He also refused the Alexanders' efforts to use the company's funds to bankroll their excessive drinking on various travels and other improper expenses.

41. For these reasons, the Alexanders' resented Ellis - and particularly his control and prudent, lawful management of the funds of the company.

42. While Dot Fail's health remained vigorous, however, they were helpless to undermine Ellis because his integrity and their motives were obvious to her.

43. However, Dot Fail's health began to decline, and gradually she grew less able to clearly discern these matters.

44. The Alexanders and coconspirators saw this as an opportunity to interfere with Ellis's relationship with Dot Fail and with his employment as CEO of FTC.

45. The Alexanders and/or coconspirators told Dot Fail that Ellis was abusing his position.

46. They told her that he was careless with FTC's money.

47. They told her that he made extravagant furniture purchases.

48. They told her that he wasted large sums of money on wine, hotels, and first class flights for unnecessary travel.

49. They told her that he was self-dealing with the company's money.

50. They told her that he was aggressive and controlling.

51. They told her that he used foul language at the office and mistreated employees.

52. They told her that key employees were threatening to leave because of him.

53. They told her that FTC was financially struggling because of Ellis.

54. They told her that FTC had fallen behind in implementing new technology because of Ellis.

55. All these statements to Dot Fail (¶¶ 44-53) were intentionally false and/or exaggerated and intended to interfere with Ellis's decades-long business relationships with Fail and FTC.

56. As an additional inducement, they stated that having a female CEO would make it easier to be certified as a Women's Business Enterprise (WBE).

57. To obtain the certification, the business must be "at least 51 percent owned, controlled, operated, and managed by a woman or women."

58. They also claimed that having a female CEO would increase their opportunities for certain government contracting work.

59. On September 5, 2022. Ellis was served with a termination letter dismissing him without notice, cause, or explanation.

60. He was replaced by Christa Alexander, a woman who was 37 years old and less experienced and qualified to perform the role.

## CAUSES OF ACTION

61. The following causes of action are based on the facts currently known and inferences drawn therefrom. Wherever factual or legal assertions are inconsistent--in whole or in part--it should be understood that the allegations are presented in the alternative.

### COUNT I: SEX DISCRIMINATION UNDER TITLE VII - UNJUST TERMINATION

62. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

63. Under Title VII, FTC is prohibited from discriminating against an employee on the basis of that employee's sex.

64. Discrimination on the basis of sex includes any discrimination which would not have occurred but-for the Plaintiff's sex.

65. FTC terminated Ellis at least in part because of his sex.

66. FTC would not have terminated Ellis but for Ellis' sex.

67. By terminating Ellis for these reasons, FTC discriminated against Ellis on the basis of his sex.

68. With this discriminatory termination, FTC violated the law.

69. In doing so, FTC harmed Ellis.

### COUNT II: AGE DISCRIMINATION UNDER THE ADEA - UNJUST TERMINATION

70. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

71. Under the ADEA, it is unlawful for FTC to terminate an employee based on that employee's age.

72. Discrimination on the basis of age includes any discrimination which would not have occurred but-for the Plaintiff's age.

73. FTC terminated Ellis at least in part because of his age.

74. FTC would not have terminated Ellis but for Ellis' age.

75. By terminating Ellis for these reasons, FTC discriminated against Ellis on the basis of his age.

76. With this discriminatory termination, FTC violated the law.

77. In doing so, FTC harmed Ellis.

COUNT III: TORTIOUS/MALICIOUS INTERFERENCE WITH CONTRACT

78. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

79. Defendants Christa Alexander, Donna Alexander, Ali Alexander-Phillips, and Jane Does interfered with Ellis's relationship with Dot Fail and FTC.

80. They did so tortiously by telling lies about Ellis.

81. They did so intentionally and willfully.

82. These actions were calculated to cause damages to the Plaintiff in lawful business

83. These actions were done deliberately to cause damage, without right or justifiable cause.

84. Plaintiff suffered harm as a result of these actions.

COUNT IV: BREACH OF EMPLOYMENT CONTRACT

85. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

86. Defendant and Plaintiff entered an employment contract.

87. This contract involved certain promises which were binding and enforceable under Mississippi law while the contract was in existence. See, e.g., Bobbitt v. Orchard, Ltd., 603 So. 2d 356, 361 (Miss. 1992); Howard v. Robinson Property Group LLC, (3:20-cv-142) (N.D. Miss. Dec. 2, 2020).

88. Defendant breached its contract with Plaintiff.

89. With these breaches, Defendant harmed Plaintiff.

## COUNT V: *MCARN* TORTIOUS TERMINATION

90. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

91. It is against the public policy of Mississippi for an employee to be fired because he reports or refuses to commit criminal misconduct.

92. Specifically, it is against the public policy of Mississippi for an officer to be fired because he reported within the company - or refused to allow - criminal misconduct by other officers against the company. *DeCarlo v. Bonus Stores, Inc.*, 989 So.2d 351 (Miss. 2008).

93. In this case, Ellis was fired as CEO because he reported and refused to allow the commission of criminal misconduct by others in the company.

94. This is a violation of Mississippi law.

## COUNT VI: CONSPIRACY

95. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

96. It is unlawful under Mississippi law to conspire with others to achieve an unlawful purpose.

97. Defendants conspired against Ellis to unlawfully damage his relationship with Dot Fail and FTC.

98. Ellis was harmed thereby.

99. This is a violation of Mississippi law.

## REMEDIES

100. Plaintiff seeks all remedies available, including but not limited to the following:

    a. Back pay;

    b. Reinstatement and/or front pay, as appropriate;

    c. Liquidated damages;

d.  Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendant's unlawful actions;

e.  Consequential damages and any other pecuniary harms flowing from Defendant's unlawful actions;

f.  Punitive damages commensurate with the misconduct and necessary to deter future violations of the law;

g.  Pre- and post-judgment interest;

h.  Attorney fees;

i.  Costs;

j.  An injunction curing Defendant's unlawful actions and prohibiting any future similar actions;

k.  Notice given to all employees regarding the violations found by this Court, and notifying such employees of the order entered proscribing any future similar violations;

l.  Any other equitable relief as this honorable Court deems appropriate.

m.  A final judgment declaring that Defendant's treatment of Plaintiff was unlawful; and/or,

n.  Any other relief available under any applicable principle of law or equity.

Respectfully submitted on October 19, 2023,

SEAN WESLEY ELLIS, Plaintiff

By:  /s/Joel F. Dillard
Joel F. Dillard (MSB No. 104202)

OF COUNSEL:

JOEL F. DILLARD, P.A.

775 N. Congress St.
Jackson, MS 39202
Telephone: 601-509-1372 (Ext. 2)
Facsimile: 601-509-1372
Emails: joel@joeldillard.com